NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Personnel Appeals Board
No. 2020-0450


APPEAL OF NEW HAMPSHIRE DIVISION OF STATE POLICE
(New Hampshire Personnel Appeals Board)

Argued: September 30, 2021
Opinion Issued: February 11, 2022


John M. Formella, attorney general (Emily C. Goering, assistant attorney general, and Matthew T. Broadhead, senior assistant attorney general, on the brief, and Emily C. Goering orally), for the New Hampshire Division of State Police.


Milner & Krupski, PLLC, of Concord (Marc G. Beaudoin and John S. Krupski on the brief, and Marc G. Beaudoin orally), for Thomas Owens.


American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the memorandum of law), as amicus curiae.


BASSETT, J.  This appeal arises from the decision of the New Hampshire Division of State Police (Division), to terminate State Trooper Thomas Owens (the employee) based upon his adjustment of his timecard and his conduct

during the subsequent investigation. The employee appealed his termination to the New Hampshire Personnel Appeals Board (PAB), which reinstated him. The Division appeals, arguing that the PAB's reinstatement of the employee was unjust and unreasonable because he is no longer qualified to be a state trooper. It also argues that the PAB erred as a matter of law when it reinstated the employee in contravention of public policy. We affirm.

The following facts were found by the PAB or are supported by the administrative record. The Division hired the employee as a probationary trooper in April 2016 and elevated him to the rank of trooper a year later. He typically worked the midnight highway shift and frequently picked up extra-duty shifts. On Monday, October 29, 2018, the employee accepted an extra-duty detail assignment, which he believed began at 3:00 p.m. later that same day. He soon realized, however, that the detail was scheduled for the following day. Although the employee had firearms training the next morning, he anticipated that he would have time to complete the training and arrive at the detail on time. On October 30, he participated in firearms training in the morning and traveled to his extra-duty detail that afternoon. Before traveling to the detail, he failed to change out of his training uniform and into his official uniform.

The employee did not complete his timecard for October 30 until the end of that week. When doing so, he realized that, between his regular shift and the extra-duty detail, he would exceed the hourly limitations for time worked in a 24-hour period and a 28-day period. Consequently, without consulting a supervisor, he "adjusted the hours" on his timecard to avoid a policy violation for exceeding the hourly limits and for traveling during his regular shift to an extra-duty assignment. The adjustments included changing his regular-duty start time to be approximately thirty minutes earlier than it actually was so that his regular-duty shift would appear to end before his extra-duty detail began.

During a routine review of timecards, the employee's supervisor noticed that the employee's October 30 timecard was inconsistent with other records. Specifically, the computer-aided dispatch records demonstrated that the employee had actually started and ended his regular shift later than was indicated by his timecard, and had used approximately sixteen minutes of regular-duty time to travel to his extra-duty detail. The employee's supervisor informally questioned him about these discrepancies. The employee told his supervisor that, when completing his timecard for October 30, he "realized [he] had mismanaged [his] hours for that day" and had adjusted the timecard to "mitigate the policy violation."

The Division later filed a formal complaint against the employee and initiated an investigation related to two possible violations of the Division's Professional Standards of Conduct: traveling to an extra-duty detail during

2

regular-duty time, and wearing an improper uniform during the extra-duty detail. The employee was interviewed three times as part of the investigation. During those interviews, he admitted that he had traveled to the extra-duty detail on regular-duty time, worn the wrong uniform, and adjusted his timecard to avoid a policy violation. He also stated that he attributed the issues with his timecard in part to "mismanagement of time[] and poor planning."

Following its investigation, the Division terminated his employment. It found that the employee had violated numerous administrative rules and the Professional Standards of Conduct by: traveling to an extra-duty detail during regular-duty time; wearing an improper uniform during extra-duty detail; intentionally submitting an inaccurate timecard; and making false statements during the course of the investigation into his conduct.

The Division determined that the employee's conduct — specifically, the adjustment of his timecard and his behavior during the investigation — had compromised his personal and professional integrity, which the Division described in its dismissal letter as "one of the most fundamental and valuable qualities that a State Trooper must possess." It found that the employee had lied during the investigation because he initially represented to his supervisor that any errors on his timecard were an accident, but later stated that he had intentionally made the entries to avoid violating the policy against traveling to an extra-duty detail during his regular-duty shift. The Division concluded that the employee had violated several provisions of the Division's Professional Standards of Conduct, including the "Integrity" provision, which provides that no Division member "shall, under any circumstances, make any false official statement or intentional misrepresentation of facts." See N.H. Admin. R., Per 1002.08(b)(7), (12) (listing terminable offenses, including violation of agency rules and falsification of agency records).

The employee appealed his termination to the PAB. See RSA 21-I:46, I (2020), :58, I (2020). Following an evidentiary hearing, the PAB ruled that the employee had violated rules by using regular-duty time to travel to an extra-duty detail, wearing the wrong uniform while on extra duty, engaging in "poor record keeping," and failing to communicate his timekeeping issues to his superiors in a timely manner. The PAB found that the employee had "recited the same consistent story" throughout the investigation and deemed him "credible," explaining that, although the employee "exercised poor judgment" and exhibited "inattention to detail and poor time management," it determined that those "deficiencies [did] not rise to the level of a termination." The PAB concluded that the employee had carried his burden of proving that "his dismissal was unwarranted by the alleged conduct and unjust in light of the facts in evidence," and ordered that he be reinstated subject to a twenty-day suspension without pay.

The Division filed a motion for rehearing, which the PAB denied. The Division then filed this appeal. See Sup. Ct. R. 10. While this appeal was pending, we granted the Division's motion to stay the employee's reinstatement.

The PAB has discretion to "reinstate an employee or otherwise change or modify any order of the appointing authority, or make such other order as it may deem just." RSA 21-I:58, I; Appeal of N.H. Div. of State Police, 171 N.H. 262, 267 (2018) ("[T]he PAB is vested with discretion to determine whether to grant relief and how to craft that relief."). Our review of the PAB's decision is governed by RSA 541:13. Appeal of N.H. Div. of State Police, 171 N.H. at 266. We treat the PAB's findings of fact as prima facie lawful and reasonable. RSA 541:13 (2021). We will not vacate or set aside the PAB's decision except for errors of law, unless we are satisfied, by a preponderance of evidence before us, that such order is unjust or unreasonable. Appeal of N.H. Div. of State Police, 171 N.H. at 266; see RSA 541:13. In reviewing the PAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but rather to determine whether its findings are supported by competent evidence in the record. Appeal of Silva, 172 N.H. 183, 186 (2019). As the appealing party, the Division has the burden to show that the PAB's decision is "clearly unreasonable or unlawful." RSA 541:13.

On appeal, the Division raises two arguments: first, that the PAB's decision was unjust or unreasonable because it reinstated a state trooper with integrity issues; and second, that the PAB erred as a matter of law when it reinstated the employee contrary to the public policy supporting dismissal of dishonest troopers. Both of the Division's arguments are based on the premise that the PAB found that the employee engaged in dishonest conduct and violated the Integrity provision of the Professional Standards of Conduct. The Division asserts that, although the PAB made no explicit finding that the employee behaved dishonestly or violated the Integrity provision, it made implicit findings to that effect because it could not have found the employee's adjustment of his timecard and his statements during the investigation to be anything other than dishonest and an Integrity violation. We disagree.

The Division does not argue in the alternative that, if the PAB found neither an Integrity violation nor dishonest behavior, that determination was unsupported by the record or erroneous. Nor does it contend that, even if the PAB found no violation of the Integrity provision and no dishonest conduct, its reinstatement order was, nevertheless, unjust, unreasonable, or unlawful. Because both of the Division's appellate challenges are premised on its interpretation of the PAB order as finding that the employee engaged in dishonest conduct and violated the Integrity provision, we first turn to construing the PAB order itself.

4

The interpretation of the PAB's order presents a question of law for us to decide. See State v. Surrell, 171 N.H. 82, 88 (2018); Guy v. Town of Temple, 157 N.H. 642, 649 (2008). The PAB expressly found that the employee violated policies warranting a twenty-day suspension without pay based on "failing to communicate [his timekeeping] problem to his superiors in a timely manner, poor record keeping[,] and travelling . . . on state time on the way to a detail wearing the wrong uniform." Noticeably absent from this list is conduct rising to the level of a violation of the Integrity provision or any characterization by the PAB of the employee's behavior as dishonest.

The Division points to two actions by the employee that it asserts demonstrate his dishonesty and his violation of the Integrity provision — adjusting his timecard, and his statements during the investigation. The PAB, however, did not view the employee's behavior regarding those incidents as dishonest or contrary to the Integrity provision. With regard to the timecard, although the PAB agreed with the Division's factual findings — observing that the employee intentionally "adjusted the hours for October 30 . . . to avoid a policy violation" — it disagreed with the conclusion that this conduct violated the Integrity provision. It construed this conduct as a failure of communication, time management, and attention to detail, rather than an intentional falsification or misrepresentation of facts.

With respect to the employee's statements during the investigation, the PAB disagreed with the Division's factual determinations. Contrary to the Division's finding that the employee lied, the PAB found that, during the interviews, the employee had "recited the same consistent story," admitting "that he paid little attention to detail and that he adjusted the hours . . . to avoid a policy violation," and denying "that he ever harbored any intention of hiding any information." The PAB also found the employee's testimony before it "credible."

Considering these findings in conjunction with the PAB's ultimate conclusion to overturn the employee's dismissal and instead impose a twenty-day suspension without pay, we interpret the PAB's order as finding no violation of the Integrity provision and as making no finding that the employee acted dishonestly. Because we reject the premise underlying both of the Division's appellate arguments, we conclude that the Division has not met its burden of demonstrating that the PAB's decision was "clearly unreasonable or unlawful." RSA 541:13.

Affirmed.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.